UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE H. GAGE,<br><br>　　　　Petitioner,<br><br>　v.<br><br>GEORGE J. GIURBINO, Warden,<br><br>　　　　Respondent. | Case No.　CV 05-5057-ODW (OP)<br><br>ORDER RE: STAY AND ABEYANCE OF HABEAS PROCEEDINGS PENDING EXHAUSTION OF CUNNINGHAM CLAIM |

## I.
## BACKGROUND

On July 11, 2005, George H. Gage ("Petitioner"), filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition"). On January 3, 2006, Respondent filed an Answer to the Petition ("Answer"). On April 5, 2006, Petitioner filed a Traverse to the Answer ("Traverse").

Just twenty-one days before Petitioner filed his Petition, on June 20, 2005, the California Supreme Court, interpreting California's determinate sentencing law ("DSL"), decided People v. Black, 35 Cal. 4th 1238 (2005), vacated, 127 S. Ct. 1210, 167 L. Ed. 2d 36 (2007) ("Black I"). On January 22, 2007, the United States Supreme Court decided Cunningham v. California, 549 U.S. 270, 127 S. Ct.

856, 166 L. Ed. 2d 856 (2007). In <u>Cunningham</u>, the United States Supreme Court, disagreeing with the California Supreme Court's decision in <u>Black I</u>, held that California's DSL violates a defendant's federal constitutional right to a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution by assigning to the trial judge, rather than the jury, the authority to make the factual findings that subject a defendant to the possibility of an upper term sentence. <u>Cunningham</u>, 127 S. Ct. 856, 860. All of the briefing in the current action was completed prior to the Supreme Court's <u>Cunningham</u> decision.

In his fourth claim herein, Petitioner asserts that the upper term sentence imposed by the trial court on his conviction for continuous sexual abuse and the trial court's imposition of consecutive sentences were imposed in violation of <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

## II.
## DISCUSSION

### A. Exhaustion of State Judicial Remedies.

As a matter of comity, a federal court will not entertain a habeas corpus petition unless the petitioner has exhausted the available state judicial remedies on every ground presented in the petition. <u>Rose v. Lundy</u>, 455 U.S. 509, 518-22, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982). The habeas statute now explicitly provides that a habeas petition brought by a person in state custody "shall not be granted unless it appears that--(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). Moreover, if the exhaustion requirement is to be waived, it must be waived expressly by the State, through counsel. <u>See</u> 28 U.S.C. § 2254(b)(3).

Exhaustion requires that the prisoner's contentions be fairly presented to the

1  state courts and be disposed of on the merits by the highest court of the state. See
2  James v. Borg, 24 F.3d 20, 24 (9th Cir. 1994); Carothers v. Rhay, 594 F.2d 225,
3  228 (9th Cir. 1979). A claim has not been fairly presented unless the prisoner has
4  described in the state court proceedings both the operative facts and the federal
5  legal theory on which his claim is based. See Duncan v. Henry, 513 U.S. 364,
6  365-66, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995); Picard v. Connor, 404 U.S. 270,
7  275-78, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971); Johnson v. Zenon, 88 F.3d 828,
8  830 (9th Cir. 1996). Petitioner has the burden of demonstrating that he has
9  exhausted available state remedies. See, e.g., Brown v. Cuyler, 669 F.2d 155, 158
10 (3d Cir. 1982). The exhaustion requirement seeks to avoid "the unseemliness of a
11 federal district court's overturning a state court conviction without the state courts
12 having had an opportunity to correct the constitutional violation in the first
13 instance." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45, 119 S. Ct. 1728, 144 L.
   Ed. 2d 1 (1999) (citations, internal brackets, and quotation marks omitted).
14
        Here, the California Court of Appeal rejected Petitioner's Blakely/Apprendi
15 claim. (Answer Ex. B.) Petitioner then presented the Blakely/Apprendi claim in
16 his petition for review in the California Supreme Court. (Id. Ex. C.) On February
17 16, 2005, the state supreme court denied the petition "without prejudice to any
18 relief to which defendant might be entitled after this court determines in People v.
19 Black, S126182 [Black I], and People v. Towne, S125677, the effect of Blakely v.
20 Washington (2004) ___ U.S. ___ 124 S. Ct. 2531, on California law." (Answer
21 Ex. D.) Black I was decided on June 20, 2005, and the Petition herein was filed
22 only twenty-one days later.
23      As discussed below, because Cunningham places Petitioner's Blakely/
24 Apprendi claim in a "fundamentally different light," further exhaustion of his
25 claim is now appropriate.
26 **B.   Intervening Change in the Law.**
27      In Cunningham, the United States Supreme Court, disagreeing with the
28 California Supreme Court's decision in Black I, held that California's DSL

violates a defendant's federal constitutional right to a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution by assigning to the trial judge, rather than the jury, the authority to make the factual findings that subject a defendant to the possibility of an upper term sentence. Cunningham, 127 S. Ct. at 860. In so holding, the Supreme Court extended the holdings in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) ("[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt") to California's DSL.

"The principle that state remedies are exhausted if the federal claim has once been presented to the highest state court, and that it is not necessary to make repeated applications or to try other state remedies, is qualified if there has been an intervening change in the law." 17B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Vikram David Amar, Federal Practice and Procedure § 4264.4 (3d Ed. 2007).

> If a prisoner has exhausted his state remedy unsuccessfully, but there is an intervening Supreme Court decision that might induce the state courts to give relief, the prisoner will be required to apply again for relief from the state courts so that they may have the first opportunity to apply the new Supreme Court decision.

Id. (footnote omitted). Further exhaustion may be required where an intervening change in federal law "cast[s] the legal issue in a fundamentally different light." Picard, 404 U.S. at 276 (citing Blair v. California, 340 F.2d 741, 744-45 (9th Cir. 1965), Pennsylvania ex rel. Raymond v. Rundle, 339 F.2d 598 (3d Cir. 1964)).[1]

---

[1] Further exhaustion is not required in the event of an intervening change in state law. See, e.g., Francisco v. Gathright, 419 U.S. 59, 63 & n.6, 95 S. Ct. 257, 42 L. Ed. 2d 226 (1974) (distinguishing situation involving an intervening change

4

In <u>Blair</u>, the state courts had rejected the petitioner's claim that he had a right to the appointment of counsel on appeal. <u>Blair</u>, 340 F.2d at 743. Thereafter, the Supreme Court decided <u>Douglas v. California</u>, 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963), which recognized for the first time a constitutional right to the appointment of counsel on appeal. <u>Blair</u>, 340 F.2d at 744. Blair filed a motion in the district court for leave to file an *in forma pauperis* application for writ of habeas corpus. <u>Id.</u> at 742. The motion was denied as frivolous, and Blair appealed to the Ninth Circuit. <u>Id.</u> The Ninth Circuit held that the denial was in error because of the subsequent Supreme Court decision in <u>Douglas</u>. <u>Id.</u> at 745. It also held, however, that further exhaustion was required because Blair had "not obtained an adverse state court ruling on the issue of whether <u>Douglas v. California</u> is applicable to Blair's pre-<u>Douglas</u> state appeal . . . ." <u>Id.</u> at 744. The Court explained:

> The underlying lesson of this case is that a state prisoner who believes that some decision of the United States Supreme Court subsequent to the state court decision in his case requires that his conviction or sentence be set aside should first pursue any state remedy which may be available to present that contention before applying for a federal writ of habeas corpus.

<u>Id.</u> at 745.

When the Supreme Court recognizes a new constitutional right, traditional exhaustion analysis mandates that the petitioner return to state court and present his or her new "federal legal theory" to that court. <u>Duncan</u>, 513 U.S. at 365-66; <u>Anderson v. Harless</u>, 459 U.S. 4, 7-8, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982);

---

in federal law); <u>Roberts v. LaVallee</u>, 389 U.S. 40, 43, 88 S. Ct. 194, 19 L. Ed. 2d 41 (1967).

Picard, 404 U.S. at 277; Vang v. Nevada, 329 F.3d 1069, 1075 (9th Cir. 2003).[2] However, the test to determine whether an intervening Supreme Court case warrants further exhaustion is not necessarily whether the case recognizes a new right. Rather, the test is whether the case casts the petitioner's claim in a "fundamentally different light." See Picard, 404 U.S. at 276. Therefore, further exhaustion may be appropriate not only where an intervening Supreme Court case establishes a new constitutional principle, but also where the intervening case has the effect of increasing significantly the likelihood that the state court would grant the petitioner's claim.

Perhaps most significantly for present purposes, further exhaustion may be appropriate where an intervening Supreme Court case overrules or otherwise

---

[2] Many other cases are in accord. See, e.g., Daboul v. Craven, 429 F.2d 164, 167-68 (9th Cir. 1970) (further exhaustion required where new case of Barber v. Page, 390 U.S. 719, 88 S. Ct. 1318, 20 L. Ed. 2d 255 (1968), held unconstitutional a state statute similar to that challenged by petitioner; further exhaustion also required on challenge to line-up procedure in light of new cases of Stovall v. Denno, 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967), and Foster v. California, 394 U.S. 440, 89 S. Ct. 1127, 22 L. Ed. 2d 402 (1969), because state courts "had no opportunity to deal with the claim of violation of due process in the line-up procedure, with the benefit of the Supreme Court's important pronouncements in Stovall and Foster"); Ashley v. California, 397 F.2d 270, 270 (9th Cir. 1968) (further exhaustion required because new cases, including Pate v. Robinson, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966), presented a potential ground for relief upon which the state courts had not yet ruled); United States ex rel. Walker v. Fogliani, 343 F.2d 43, 46-47 (9th Cir. 1965) (further exhaustion required where new case of Escobedo v. Illinois, 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977 (1964) "cast new light upon a fundamental guarantee of the Federal Constitution"; district court ordered to hold petition in abeyance while petitioner exhausted claims); In re Whittington, 391 U.S. 341, 343, 88 S. Ct. 1507, 20 L. Ed. 2d 625 (1968) (on review following grant of certiorari, where petitioner relied on United States Supreme Court Case decided after state court's dismissal of the case, Supreme Court vacated state court judgment and remanded case to state court because the state courts had not had the opportunity to assess the impact of the new decision on petitioner's claims).

disapproves a state court precedent on which the state court had based its denial of relief. See, e.g., Wood v. Superintendent, Carolina Correctional Unit, 504 F.2d 1069, 1070 (4th Cir. 1974) (exhaustion required where Berry v. City of Cincinnati, 414 U.S. 29, 94 S. Ct. 193, 38 L. Ed. 2d 187(1973), "effectively overruled" Virginia Supreme Court case holding Argersinger v. Hamlin, 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972), was not retroactive).[3] On the other hand, where the intervening Supreme Court case endorses the same constitutional analysis previously employed by the state court, and thus does not increase significantly the petitioner's chances of prevailing in state court, federal habeas courts have refused to require further exhaustion. See, e.g., O'Neil v. Nelson, 422 F.2d 319, 323-24 (9th Cir. 1970), rev'd on other grounds, 402 U.S. 622, 91 S. Ct. 1723, 29 L. Ed. 2d 222 (1971) (although Bruton v. United States, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968) postdated state courts' decisions, exhaustion is not required where the petitioner had relied in state court on People v. Aranda, 63 Cal. 2d 518 (1965)); "substantially the same question that [petitioner] now presents was presented to and decided by the California court, California having

---

[3] Further exhaustion also may be required i) where a new Supreme Court case sets forth a mode of constitutional analysis different from that used by the state court. See, e.g., Sweet v. Cupp, 640 F.2d 233, 237 (9th Cir. 1981) (further exhaustion required in light of intervening case of Craig v. Boren, 429 U.S. 190, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976), establishing a more stringent Equal Protection standard than that employed by state court); ii) where an intervening Supreme Court case undermines earlier Supreme Court authority on which the state court relied. See, e.g., Franklin v. Conway, 546 F.2d 579, 581-82 (4th Cir. 1976) (new Supreme Court cases "refine[d] and, at least arguably, alter[ed] the test of invalidity [governing issue of constitutionality of statutory presumption] set forth in [earlier Supreme Court case]"); or iii) where an intervening Supreme Court case abrogates a prior Supreme Court case that previously had impeded the petitioner's success on the merits. See, e.g., Reynolds v. Oklahoma, 397 F. Supp. 1112, 1114 (W.D. Okla. 1975).

anticipated Bruton.");[4] see also Holley v. Smith, 792 F.2d 1046, 1048 (11th Cir. 1986) (new case of Solem v. Helm, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983) was not a "fundamental departure from existing law," for the case "did nothing more than . . . apply long established principles to the particular facts of that case"; further exhaustion not required); Hawkins v. West, 706 F.2d 437, 439-40 (2d Cir. 1983) (challenge to sufficiency of evidence did not require further exhaustion in light of Jackson v. Virginia; Jackson "flowed from" In re Winship, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970), and state courts had not applied a standard different from that articulated in Jackson); cf. Hudson v. Rushen, 686 F.2d 826, 830 (9th Cir. 1982) (state courts' alleged failure to consider Ninth Circuit cases articulating standards substantially parallel to those set forth in People v. Marsden, 2 Cal. 3d 118 (1970) did not render claims unexhausted; "The exhaustion requirement does not bar admission to the federal courts until the state courts have explicitly considered every relevant federal case.").

---

[4] The Ninth Circuit in O'Neil also opined that the issue was controlled by Roberts v. LaVallee, 389 U.S. 40 (1967), and Pope v. Harper, 407 F.2d 1303 (9th Cir. 1969). O'Neil, 422 F.2d at 324. In Pope, the district court ordered the petitioner to return to state court to exhaust his federal constitutional claim in light of the new case of Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). The Ninth Circuit reversed, holding that exhaustion was not required because "[w]hatever support for the order derived from Blair [v. California, supra], was destroyed by the Supreme Court's decision in Roberts v. LaVallee . . . ." Pope, 407 F.2d at 1305 (citation omitted). However, as indicated above, Roberts involved the issue of intervening state law, not intervening Supreme Court law. Any notion that Roberts governs the issue of exhaustion in the light of intervening federal law was dispelled in Francisco and Picard, both of which cited Blair. Moreover, in Hudson v. Rushen, 686 F.2d 826, 830 (9th Cir. 1982), the Ninth Circuit recognized, but distinguished, Blair, without intimating that Blair was no longer good law. See Hudson, 686 F.2d at 830 n.2. Therefore, to the extent that the Ninth Circuit's pronouncements in O'Neil and Pope undercut the authoritativeness of Blair in this Circuit, those cases have not survived Francisco, Picard, and Hudson.

Cunningham was not the first Supreme Court case to recognize that certain facts increasing the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. See, e.g., Blakely, 542 U.S. 296; Apprendi, 530 U.S. 466. In the circumstances of the present case, however, Cunningham casts Petitioner's Blakely/Apprendi claim in a "fundamentally different light" from the light that illuminated the claim at the time the state courts ruled.[5]

When the California Supreme Court rejected Petitioner's Blakely/Apprendi claim, it cited specifically to Black I as potentially entitling Petitioner to relief. (Answer Ex. D.) Petitioner would not have been entitled to relief under Black I. By eliminating the impediment of Black I, Cunningham now has increased Petitioner's chances of prevailing in state court on his Blakely/Apprendi claim.[6]

On remand of Black I in light of Cunningham, the California Supreme Court held that imposition of an upper term sentence by the judge does not violate a defendant's right to a jury trial if at least one aggravating circumstance is

---

[5] The Court need not, and does not, reach the issue of whether Cunningham announced a "new rule" within the meaning of the retroactivity analysis discussed in Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989); see Schardt v. Payne, 414 F.3d 1025, 1027 (9th Cir. 2005) (Blakely not retroactive); but see Cunningham, 127 S. Ct. at 869 (criticizing Black I for having examined California law to determine that California's sentencing system did not implicate significantly the concerns underlying the Sixth Amendment's jury-trial guarantee; "Our decisions, however, leave no room for such an examination"; "[a]sking whether a defendant's basic jury-trial right is preserved, though some facts essential to punishment are reserved for determination by the judge, we have said, is the very inquiry Apprendi's 'bright-line rule' was designed to exclude"); id. at 871 ("Contrary to the Black [I] court's holding, our decisions from Apprendi to Booker point to the middle term specified in California's statutes, not the upper term, as the relevant statutory maximum.").

[6] This Court expresses no view regarding the ultimate merits of Petitioner's Blakely/Apprendi claim in light of Cunningham.

established by means that satisfy Sixth Amendment requirements, thereby making the defendant eligible for the upper term. People v. Black, 41 Cal. 4th 799, cert. denied, 41 Cal. 4th 799 (2007) ("Black II"). The Black II court stated specifically: "[I]mposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions." Id. at 816. In Black II, those circumstances included: (1) the fact that the information alleged, and the jury found true beyond a reasonable doubt, that defendant committed the offense of continuous sexual abuse of a child by means of force, violence, duress, menace, and fear of immediate and unlawful bodily injury, and the trial court identified the use of force as an aggravating circumstance under Penal Code section 1170;[7] and (2) the fact that Black had numerous prior convictions increasing in seriousness. Black II, 41 Cal. 4th at 817-19.

Here, in sentencing Petitioner to the upper term on the continuous sexual abuse count, the trial court observed he following aggravating factors: the nature of the crimes; Petitioner took advantage of his position of trust with the victim; the victim was vulnerable with no one to come to her aide; and the numerous crimes charged. (Supp'l CT at 16.) The California Court of Appeal noted that the trial court gave the following explanation of it decision to impose the upper term:

> [T]he court finds the following factors in aggravation. Number 1, the nature of the crime where as a 288.5 can be committed by as little as three acts of substantial sexual conduct over three months these crimes that occurred between the months were numerous way beyond what

---

[7] In Petitioner's case herein, the definition of the crime of continuous sexual abuse of a child for which Petitioner was convicted did not include the elements of force, violence, menace, duress, or fear. (CT at 361-62); Cal. Penal Code § 288.5(a).

would be required for 288.5.[8]  Further, the defendant took . . . advantage of a position of trust . . . in that he was the stepfather who was trusted with the victim in this case.  Thirdly, the victim was particularly vulnerable in that he sought her out when there were no others around to come to her aid or to protect her from defendant.  Also, there are numerous crimes.  The way the prosecutor charged this case he could have charged literally hundreds of crimes in this case buy yet chose to only allege 19, some of which are duplicative.  So that is a further aggravating factor.  The defendant could have been convicted of many more counts that were not even charged.

(Answer Ex. B at 121.)

After setting forth this recitation, the court of appeal specifically noted that "the foregoing findings are not specifically reflected in the jury's verdict." (Id.) This Court agrees and specifically notes that the instruction to the jury relating to continuous sexual abuse of a child reflects that the jury need find only that over at least a three month period, a defendant engaged in three or more acts of substantial sexual conduct or three or more acts of lewd or lascivious conduct (CT at 362). The verdict form itself only reflects that the conduct occurred between January 1, 1994, and June 1, 1994 (id. at 407), it gives no indication that the jury found that during that period that the "crimes that occurred . . . were numerous way beyond what would be required for 288.5." (See Answer Ex. B at 121.) The trial court's other reasons are equally speculative.

---

[8] The Court notes that the instruction to the jury relating to continuous sexual abuse of a child reflects that the jury need find only that over at least a three month period, a defendant engaged in three or more acts of substantial sexual conduct or three or more acts of lewd or lascivious conduct (CT at 362). The verdict form itself only reflects that the conduct occurred between January 1, 1994, and June 1, 1994 (id. at 407), it gives no indication that the jury found that during that period that the "crimes that occurred . . . were numerous way beyond what would be required for 288.5."

11

Thus, it is unclear to this Court whether the judge's imposition of the upper term sentence, based on the stated aggravating reasons, may be in conflict with the Supreme Court's holding in Cunningham and/or the state supreme court's holding in Black II. Principles of comity suggest that the California courts should have the opportunity to address this conflict. Thus, since Petitioner's Blakely/Apprendi claim currently stands as unexhausted in light of Cunningham, it is appropriate to require further exhaustion.

Since the Supreme Court in Cunningham (unlike Apprendi and Blakely) expressly overruled California state law as set forth in Black I, Petitioner still may be able to present his newly unexhausted claim to the California Supreme Court. See In re Consiglio, 128 Cal. App. 4th 511 (2005) (entertaining Blakely claim on habeas corpus, although deeming Blakely non-retroactive); see generally In re Harris, 5 Cal. 4th 813, 825 (1993) ("Habeas Corpus has become a proper remedy in this state to collaterally attack a judgment of conviction which has been obtained in violation of fundamental constitutional rights.") (citations and quotation marks omitted); Mendez v. Superior Court, 87 Cal. App. 4th 791, 799 (2001) (claim that conviction was obtained in violation of fundamental constitutional rights may be raised by state habeas petition).[9]

This Court has discretion to stay a petition to give a petitioner time to exhaust state court claims. Blair, 340 F.2d at 745. As noted by the Ninth Circuit, where a state prisoner has not exhausted his state court remedies before applying for a federal writ of habeas corpus, the district court may usually either dismiss the

---

[9] The Court expresses no opinion concerning whether consideration of a state habeas petition might be foreclosed by the principles discussed in In re Clark, 5 Cal. 4th 750, 763-87 (1993). This is an issue for the California Supreme Court to evaluate in the first instance. Moreover, even if there exists an applicable state procedural bar, the California Supreme Court nevertheless might choose to reach the merits of Petitioner's claims. See, e.g., Park v. California, 202 F.3d 1146 (9th Cir. 2000).

application for that reason, or hold it in abeyance while affording the applicant a reasonable opportunity to exhaust his state court remedies. Id. More importantly, the court held that "[i]n view of the rather novel exhaustion-of-remedies issue which is involved in this case, as discussed above, we believe the latter course is preferable here." Id.

This Court believes the situation here involves as much of a "novel exhaustion-of-remedies issue" as did the situation in Blair. The petitioner in Blair filed his federal habeas petition because of and after a change in federal law (and the court stayed his petition while he returned to state court to exhaust his claims). Here, Petitioner filed the current Petition twenty-one days after the Black I decision was issued, and his Blakely/Apprendi claim at that time was fully exhausted. Then, as a result of Cunningham, the status of his Blakely/Apprendi claim "flip-flopped" from exhausted to unexhausted due to circumstances well beyond his control.

Finally, this Court believes that the one-year AEDPA limitation period may have run during the time the current Petition has been pending. A stay of the current proceedings in order to allow Petitioner to exhaust this claim would prevent any prejudice to Petitioner.[10]

Based on the foregoing, the Court finds that a stay of the current proceedings is warranted.

///

---

[10] See, e.g., Tillema v. Long, 253 F.3d 494, 504 (9th Cir. 2001) (the district court erred when it dismissed the petition five months after the AEDPA statute of limitation expired. "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate.") (quoting Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999)); see also United States ex rel. Walker, 343 F.2d at 46-47 (where new Supreme Court case shed new light on Petitioner's claim, the district court was ordered to hold petition in abeyance while petitioner returned to state court to exhaust claims).

## III.

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The current proceedings are hereby stayed pending exhaustion of Petitioner's <u>Blakely/Apprendi</u> claim in light of <u>Cunningham</u>.

2. Petitioner shall further exhaust this claim in a habeas corpus petition filed in state court within thirty days of the date of this Order.

3. If Petitioner chooses to file his habeas petition in a state court other than the California Supreme Court, and his habeas petition is denied by that lower court, Petitioner shall present his unexhausted claim in a habeas petition filed in the next higher state court within thirty days of the lower court's denial.

4. Within ten days of the filing of his state habeas petition(s), Petitioner shall lodge a conformed copy of the petition with this Court. Within ten days of the issuance of any state court ruling on his state habeas petition(s), Petitioner shall lodge a copy of the ruling with this Court.

5. Petitioner shall file a Status Report with the Court on the first day of each month, advising the Court on the status of the matter in the state court(s).

6. Assuming Petitioner does not obtain habeas relief from the state courts, this matter will be held in abeyance until either (a) Petitioner lodges a copy of the California Supreme Court ruling on his habeas petition, or (b) Respondent advises the Court that the California Supreme Court has denied Petitioner's habeas petition, whichever occurs first. At that time, the Court shall issue an order re: further proceedings.

DATED: May 21, 2008

HONORABLE OSWALD PARADA
United States Magistrate Judge

14