1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16

| | |
|---|---|
| GEORGE H. GAGE,<br><br>                    Petitioner,<br><br>            v.<br><br>GEORGE J. GIURBINO,<br>Warden,<br><br>                    Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CV 05-5057-ODW (OP)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

17
18
19
20
21

        This Report and Recommendation is submitted to the Honorable Otis D. Wright, II, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

22
23

## I.

## PROCEEDINGS

24
25
26
27
28

        On July 11, 2005, George H. Gage ("Petitioner"), filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition").  On January 3, 2006, Respondent filed an Answer to the Petition ("Answer").  On April 5, 2006, Petitioner filed a Traverse to the Answer ("Traverse").

On May 21, 2008, this Court stayed the proceedings pending Petitioner's state court exhaustion of his <u>Blakely</u>[1] claim, in light of the United States Supreme Court's January 22, 2007, intervening ruling in the case of <u>Cunningham v. California</u>, 549 U.S. 270, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007).  (Dkt. No. 35.) On January 22, 2010, the Court lifted the stay.  (Dkt. No. 61.)  On June 22, 2010, Respondent filed a Supplemental Answer to the Petition.  (Dkt. No. 71.)  On August 23, 2010, Petitioner filed a Supplemental Traverse.  (Dkt. No. 74.)  Thus, this matter is ready for decision.

## II.

## PROCEDURAL HISTORY

On March 20, 2000, Petitioner was convicted by a Los Angeles County Superior Court jury of one count of continuous sexual abuse (Cal. Penal Code § 288.5 (count one)), nine counts of forcible rape (Cal. Penal Code § 261(a)(2) (counts two through ten), and nine counts of lewd acts against a child (Cal. Penal Code § 288(a) (counts eleven through nineteen).[2]  (Clerk's Transcript ("CT") at 407-25.)  On May 30, 2002, the court sentenced Petitioner to a total state prison term of seventy years.[3]  (Lodgment 3 at 15.)

---

[1]  <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[2]  This was Petitioner's second trial on the charges.  (Lodgment 8 at 2 n.1.) The first ended in mistrial with the jury hung eleven to one for conviction.  (<u>Id.</u>) The victim was declared unavailable for the first trial, and her preliminary hearing testimony was offered into evidence.  (<u>Id.</u>)

[3]  On November 27, 2000, the superior court granted a motion for new trial on the ground of newly discovered evidence.  <u>See</u> <u>People v. Gage</u>, No. B147219, 2001 WL 1446950, at *5 (Cal. App. Nov. 14, 2001).  The court of appeal reversed that order, finding that the trial judge conducted an unauthorized, independent

(continued...)

2

On April 7, 2004, and July 29, 2004, Petitioner filed an opening brief and a supplemental opening brief respectively in the California Court of Appeal. (Answer Exs. A1, A2.)  On December 6, 2004, the court of appeal modified the judgment, ordering that the abstract of judgment be corrected to reflect that in counts six through ten, Petitioner was convicted under California Penal Code section 261(a)(2), rape, not section 288 (b)(1), lewd acts.  (Id. Ex. B.)  The court of appeal affirmed the judgment in all other respects.  (Id.)

On January 11, 2005, Petitioner filed a petition for review with the California Supreme Court.  (Id. Ex. C.)  On February 16, 2005, the supreme court denied the petition without prejudice pending the court's ruling in People v. Black on the effect of Blakely.  (Id. Ex. D.)

On April 16, 2005, Petitioner filed a habeas corpus petition in the Los Angeles County Superior Court.  (Supp'l Answer at 2.)  On May 18, 2005, the superior court denied the petition.  (Id.)

On May 28, 2005, Petitioner filed a habeas corpus petition in the California Court of Appeal.  (Id.)  On June 15, 2005, the court of appeal denied the petition.

On June 25, 2005, Petitioner filed a habeas corpus petition in the California Supreme Court.  The supreme court denied the petition.[4]  (Id.)

On November 10, 2005, the Los Angeles County Superior Court issued a corrected abstract of judgment.  (Id. Ex. E.)

On August 10, 2009, Petitioner filed a habeas petition in the California Supreme Court raising his Cunningham claim.  (See Dkt. No. 61.)  On January 13,

---

[3](...continued)
investigation, actively and intentionally soliciting and considering matters outside the record.  Id. at *9.

[4]  Respondent contends the petition was denied on May 11, 2005.  (Supp'l Answer at 2).  As this would precede the filing of the petition, it does not appear to be accurate.

2010, the supreme court denied Petitioner's claim without comment or citation to authority.  (Id.)

### III.

### SUMMARY OF THE EVIDENCE PRESENTED AT TRIAL

Since Petitioner is challenging the sufficiency of the evidence to support his conviction for rape, the Court has independently reviewed the state court record. See Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).  Based on this review, the Court adopts the factual discussion of the California Court of Appeal opinion, as a fair and accurate summary of the evidence presented at trial:[5]

> We recite the facts of this case as recounted in our prior opinion in People v. Gage, Case No. B147219, filed on November 14, 2001: Defendant and Wanda Gage were married in 1990, when Wanda's daughter, Marian, was in kindergarten.  The couple had lived together with Wanda's two children, Marian and Lionel B., for three years before their marriage.  Both children treated defendant as their father and referred to him as "daddy."
>
> In 1993, the family moved from Texas to Palmdale, where they lived for a period of approximately 18 months.  During that period of time, defendant regularly sexually abused Marian.  These acts of abuse usually consisted of penile penetration of Marian's vagina, followed by ejaculation on Marian's clothes.  Sometimes defendant touched or

---

[5] "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (citing 28 U.S.C. § 2254(e)(1)). Recent Ninth Circuit cases have accorded the factual summary set forth in an opinion of the California Court of Appeal a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1). See, e.g., Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2009) (citations omitted); Slovik v. Yates, 556 F.3d 747, 749 n.1 (9th Cir. 2009).

sucked Marian's breasts or put his penis on her buttocks.  The abuse
usually occurred in Marian's bedroom, when her mother and brother
were not home.  Typically, Marian would be on her back and defendant
would move her underpants to one side and penetrate her.

When Marian was in the sixth grade at Ocotillo Elementary
School, the abuse occurred once a week.  When she attended Antelope
Valley Christian School, in the seventh grade, the abuse occurred twice
a week.  This latter pattern continued when she was removed from
Antelope Valley after a semester and home-schooled by Wanda, a
long-time teacher.  During this time, there may have been two weeks
when defendant did not have intercourse with Marian, but he still
touched her.

Defendant told Marian that the touching was a secret, and she was
afraid to say anything because defendant said he would hurt her, her
mother, or her brother.  Marian believed this; once she saw respondent,
in a moment of anger, throw their dog across the room and against a
wall.  Wanda related an incident where defendant was angry and hit her
in front of Marian and Lionel, although Marian did not recall the
incident.  Defendant also was mean to Wanda and Lionel.  He
humiliated and demeaned Wanda and told Marian and her brother to
address Wanda as "fat momma."  Defendant was nicer to Marian than
he was to Lionel.

Marian, who started menstruating when she was nine and suffered
from premenstrual cramps, experienced more severe cramps when she
lived in Palmdale.  She generally had some bleeding after each act of
intercourse.  She also experienced vaginal pain.  She hid her soiled
underwear or rolled them up in a towel so that her mother would not see
them.  During this time, Wanda noticed some staining and discharge in

5

Marian's underpants.  Wanda thought the discharge was fecal matter, and believed that Marian had bowel problems.  At one point Marian complained of cramps and Wanda suggested taking Marian to the doctor for a pelvic examination.  Defendant vetoed the idea, telling Wanda it would be inhumane to subject a child of Marian's tender years to a pelvic exam.

In May 1995, Wanda learned that, the previous year, defendant had fathered a child out of wedlock whom he was surreptitiously supporting with community funds.  Wanda and the children moved back to Texas.  The divorce was finalized in May 1998.  After moving back to Texas, neither Wanda nor Marian had any contact or communication with defendant.

In September 1998, when Marian was in the eleventh grade, she and Wanda got into an argument over Marian's failing grades, which had been a problem since the sixth grade.  Marian blurted out, "You weren't the one who was being touched on," revealing to Wanda for the first time that defendant had sexually molested her.  The police in Texas were notified, and Marian made a report of the incidents.

The People presented the testimony of Dr. Steven E. Sultan, an expert in child abuse accommodation syndrome and related experiences and behavioral traits common to child sexual abuse victims, including secrecy, a feeling of helplessness, suicidal ideation, accommodation to the abuse, and delayed disclosure.  Syndrome sufferers may develop a host of problems, including depression, psychosomatic disorders involving the stomach and bowel, promiscuity, drug and alcohol abuse, and academic problems.  Based on the literature and the expert's experience, acts of abuse generally progress from simple touching to more complex sexual acts, and the offender is usually a parenting party

6

known to the child.

Dr. Sultan also noted that child abuse offenders are of two types, pedophiles and non-pedophiles. Pedophiles stalk strangers and choreograph situations to provide access to children; they rarely have sexual relationships with other adults. Non-pedophiles typically have spouses and children and occupy a parental role vis-à-vis the child. When evaluated, they do not appear to show a significant psychological disturbance and may appear to be normal, productive members of society.

In his defense, defendant maintained that he never sexually abused Marian, and that Marian and Wanda fabricated the story they presented in court. To establish his defense of fabrication, defendant presented the testimony of a psychiatrist and character witnesses, and testified in his own defense.

The defense expert, Dr. Samuel Miles, reported his findings based on a two-hour interview with defendant and his review of the police reports, medical reports, and the preliminary hearing transcript. Although he did not interview Marian or Wanda, Dr. Miles acknowledged that, in order to do a proper and thorough evaluation, he would have had to interview them. Dr. Miles opined that defendant did not meet the diagnostic criteria for pedophilia. He also stated that the physical examination of Marian conducted following her report of the abuse, which reported an intact hymen without any tear or rupture, was not consistent with Marian's claims of post-coital bleeding.

Defendant, testifying in his own behalf, denied having molested Marian in any manner. He also denied having committed any acts of violence upon Wanda, Marian or Lionel, except for spanking the children on one or two occasions. He denied demeaning Wanda,

7

threatening Marian, or throwing the puppy against the wall as described by Marian and Wanda. He had a good sexual relationship with Wanda and did not accord Marian any special treatment.

Defendant also presented two character witnesses who testified to his genial, nonviolent disposition.

In rebuttal, the People presented the testimony of Alicia Floyd, a friend of Wanda's from work, who reported that she had dropped by Wanda and defendant's home one day unannounced, and had observed defendant degrade and demean Lionel for no apparent reason. She felt that defendant had animosity for Wanda and the children and was not a loving husband and father.

The People also presented another expert witness, Marsha Wehr, to rebut the defense's expert testimony. Ms. Wehr was a family nurse practitioner with substantial experience in examining child sexual abuse victims. Ms. Wehr explained that physical findings of sexual abuse in children appear in up to 70 percent of cases of "estrogenized" females if an examination is conducted within 72 hours of the trauma. After that, positive findings drop to 13 percent, and no physical signs are apparent after 14 days. Ms. Wehr stated that the absence of physical findings does not mean that abuse did not occur. In fact, most examinations are normal, even with long-term vaginal intercourse. As a result, it is common in sexual abuse cases for examiners to conclude that the findings are consistent with the oral history of abuse.

At the time of her examination, Marian was 17 years old and fully estrogenized. Moreover, the exam took place over three years after the last act of abuse. Her hymen did not appear unusual for her age or inconsistent with her claims. The absence of any physical findings was not unusual under these circumstances.

8

After reviewing the preliminary hearing transcript, Ms. Wehr testified that Marian's claims of regular abuse and post-coital bleeding were not unusual. She noted that children sometimes mistake blood and its source.

In his argument to the jury, defendant's attorney maintained that there was a reasonable doubt that defendant had sexually abused Marian. He pointed to Dr. Miles's testimony that defendant was not a pedophile, and argued that Marian had no scarring consistent with the bleeding that allegedly occurred. The defense questioned Marian's delay in reporting the charges, and argued that Marian fabricated the charges because she was under pressure from her mother due to her poor performance in school and because she was depressed.

(Answer Ex. B at B2-6.)

# IV.

## PETITIONER'S CLAIMS

Petitioner raises the following claims for habeas corpus relief:

(1)     The trial court's failure to provide the jury with a unanimity instruction (CALJIC 17.01), deprived Petitioner of his Sixth and Fourteenth Amendment rights to a jury trial and due process (Pet. at 5);

(2)     There was insufficient evidence to support the rape allegations in counts two through ten (id.);

(3)     The abstract of judgment should be amended to conform to the judgment (id. at 6); and

(4)     The trial court's choice of both an upper term and consecutive sentences violated Petitioner's right to jury trial (id.).

/ / /

9

# V.

## STANDARD OF REVIEW

The standard of review applicable to Petitioner's claims is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

(d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Further, a state court factual determination shall be presumed correct unless rebutted by clear and convincing evidence.  Id. § 2254(e)(1).

Under the AEDPA, the "clearly established Federal law" that controls federal habeas review of state court decisions consists of  holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  To determine what, if any, "clearly established" United States Supreme Court law exists, the court may examine decisions other than those of the United States Supreme Court.  LaJoie v. Thompson, 217 F.3d 663, 669 n.6 (9th Cir. 2000); Van Tran v. Lindsey, 212 F.3d 1143, 1154 (9th Cir. 2000), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed.

2d 144 (2003). Ninth Circuit cases "may be persuasive." <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600 (9th Cir. 1999). On the other hand, a state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law, if no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court. <u>Brewer v. Hall</u>, 378 F.3d 952, 955 (9th Cir. 2004); <u>see also</u> <u>Carey v. Musladin</u>, 549 U.S. 70, 77, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006) (in the absence of a Supreme Court holding regarding the prejudicial effect of spectators' courtroom conduct, the state court's decision could not have been contrary to or an unreasonable application of clearly established federal law).

Although a particular state court decision may be both "contrary to" and "an unreasonable application of" controlling Supreme Court law, the two phrases have distinct meanings. <u>Williams</u>, 529 U.S. at 405. A state court decision is "contrary to" clearly established federal law if the decision either applies a rule that contradicts the governing Supreme Court law, or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam); <u>Williams</u>, 529 U.S. at 405-06. When a state court decision adjudicating a claim is contrary to controlling Supreme Court law, the reviewing federal habeas court is "unconstrained by § 2254(d)(1)." <u>Williams</u>, 529 U.S. at 406. However, the state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Packer</u>, 537 U.S. at 8.

State court decisions which are not "contrary to" Supreme Court law may only be set aside on federal habeas review "if they are not merely erroneous, but 'an <u>unreasonable</u> application' of clearly established federal law, or based on 'an <u>unreasonable</u> determination of the facts.'" <u>Id.</u> at 11 (citing 28 U.S.C. § 2254(d)). Consequently, a state court decision that correctly identified the governing legal

rule may be rejected if it unreasonably applied the rule to the facts of a particular case.  See Williams, 529 U.S. at 406-10, 413 (e.g., the rejected decision may state Strickland rule correctly but apply it unreasonably); Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam).  However, to obtain federal habeas relief for such an "unreasonable application," a petitioner must show that the state court's application of Supreme Court law was "objectively unreasonable."  Visciotti, 537 U.S. at 27.  An "unreasonable application" is different from an erroneous or incorrect one.  Williams, 529 U.S. at 409-10; see also Visciotti, 537 U.S. at 25.

Where, the California Supreme Court denies a petitioner's claims without comment, the state high court's "silent" denial is considered to be "on the merits" and to rest on the last reasoned decision on these claims, in this case, the grounds articulated by the California Court of Appeal in its decision.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-06, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991); Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1992); see also Kennedy v. Lockyer, 379 F.3d 1041, 1052 (9th Cir. 2004); Gill v. Ayers, 342 F.3d 911, 917 n.5 (9th Cir. 2003).

## VI.

## DISCUSSION

**A.**   **Habeas Relief Is Not Warranted on Petitioner's Claim of Instructional Error**.

   **1.**   **Background.**

Petitioner contends that the trial court failed to provide the jury with a unanimity instruction, CALJIC 17.01, thereby violating his Sixth and Fourteenth Amendment rights to a jury trial and due process.  (Pet. at 5.)  Specifically, Petitioner argues that a unanimity instruction was required because "more acts potentially occurred than were charged and the evidence made it impossible to tell

1  which, if any, act occurred at any given time." (Answer Ex. A1 at A61.)

2  Petitioner also alleges the alleged acts do not fall under the continuous course of

3  conduct exception because the acts were not so closely connected that they formed

4  one and the same transaction.  (Id. at A63.)

5       Under California law, a unanimity instruction such as CALJIC No. 17.01 is

6  given when the prosecution introduces evidence of more than one act (or

7  omission) that could support the charged offense.  The jury is then instructed that

8  all jurors must agree as to which act (or omission) the verdict is based.  CALJIC

9  No. 17.01.  The rule derives from the requirement of the California Constitution

10 that a verdict in a criminal case must be unanimous.[6]  See Cal. Const., art. I, § 16.

11 However, California courts have held that a unanimity instruction is not required

12 when the acts alleged are so closely connected as to form part of one transaction.

13 People v. Stankewitz, 51 Cal. 3d 72, 100 (1990); People v. Diedrich, 31 Cal. 3d

14 263, 282 (1982).  This "continuous conduct" rule applies when the defendant

15 offers essentially the same defense to each of the acts, and there is no reasonable

16 basis for the jury to distinguish between them.  Stankewitz, 51 Cal. 3d at 100.

17 Such is the case here.

18       As a general proposition, federal habeas courts do not review a state court's

19 interpretation of state law.  Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475,

20 116 L. Ed. 2d 385 (1991).  Claims of error in state jury instructions are generally a

21 matter of state law and thus do not usually invoke a constitutional question.

22 Gilmore v. Taylor, 508 U.S. 333, 342-343, 113 S. Ct. 2112, 124 L. Ed. 2d 306

23 (1993).  "Claims that merely challenge the correctness of jury instructions under

24 state law cannot reasonably be construed to allege a deprivation of federal rights."

25 _____

26      [6]  The United States Constitution does not guarantee a state criminal
defendant the right to a unanimous verdict.  See Apodaca v. Oregon, 406 U.S. 404,
27 410-12, 92 S. Ct. 1628, 1633, 32 L. Ed. 2d 184 (1972); Johnson v. Louisiana, 406
U.S. 356, 363, 92 S. Ct. 1620, 1625, 32 L. Ed. 2d 152 (1972).
28

1    <u>Van Pilon v. Reed</u>, 799 F.2d 1332, 1342 (9th Cir. 1986); <u>see also</u> <u>Menendez v.</u>

2    <u>Terhune</u>, 422 F.3d 1012, 1029 (9th Cir. 2005) ("Any error in the state court's

3    determination of whether state law allowed for an instruction . . . cannot form the

4    basis for federal habeas relief."). An instructional error "does not alone raise a

5    ground cognizable in a federal habeas corpus proceeding." <u>Dunckhurst v. Deeds</u>,

6    859 F.2d 110, 114 (9th Cir. 1988). Thus, to the extent Petitioner contends that the

7    failure to give the jury instruction was a violation of state law, such a claim is not

8    cognizable on federal habeas review.

9        **2.**    **California Court Opinions.**

10       In finding that the failure to give a unanimity instruction was not error, the

11   court of appeal stated as follows:

12         Our [state] Supreme Court has explained the unanimity

13        requirement as follows: "In a criminal case, a jury verdict must be

14        unanimous. Additionally, the jury must agree unanimously the

15        defendant is guilty of a specific crime. Therefore, cases have long held

16        that when the evidence suggests more than one discrete crime, either the

17        prosecution must elect among the crimes or the court must require the

18        jury to agree on the same criminal act. This requirement of unanimity

19        as to the criminal act 'is intended to eliminate the danger that the

20        defendant will be convicted even though there is no single offense that

21        all the jurors agree the defendant committed.' For example, in <u>People</u>

22        <u>v. Diedrich</u>, <u>supra</u>, 31 Cal.3d 263, the defendant was convicted of a

23        single count of bribery, but the evidence showed two discrete bribes.

24        We found the absence of a unanimity instruction reversible error

25        because without it, some of the jurors may have believed the defendant

26        guilty of one of the acts of bribery while other jurors believed him guilty

27        of the other, resulting in no unanimous verdict that he was guilty of any

28

specific bribe.  (Id. at pp. 280-283.)  'The [unanimity] instruction is
designed in part to prevent the jury from amalgamating evidence of
multiple offenses, no one of which has been proved beyond a reasonable
doubt, in order to conclude beyond a reasonable doubt that a defendant
must have done something sufficient to convict on one count.'

Where there is no danger that the jury might convict the defendant
of the charged offense without agreeing on the criminal act committed,
there is no need for the unanimity instruction.  Thus, for example, in
People v. Riel (2000) 22 Cal.4th 1153, during prosecution of a single
charge of robbery, evidence[] was presented concerning two discrete
crimes.  The Supreme Court nevertheless found no error in failing to
give CALJIC No. 17.01:  Even assuming that two distinct robberies
occurred rather than one continuous robbery, 'there was no evidence
here from which the jury could have found defendant was guilty of' the
robbery in the car but not the earlier one. [Citation.] There was no
danger some jurors would find defendant committed the . . . Truck Stop
robbery but not the one in the car, while others would find he committed
the robbery in the car but not the earlier one.  (Id. at p. 1199.)  The Court
found telling the fact that [T]he [sic] parties never distinguished between
the two acts. The defense was the same as to both:  defendant . . . did not
participate in any act of robbery.  By contrast, in People v. Diedrich,
supra, 31 Cal.3d 263, which found prejudicial error in not requiring
unanimity, the facts showed two distinct acts of bribery to which the
defendant offered different defenses: a 'simple denial' of one act and an
'expla[nation]' . . . of the other.  Accordingly, the Diedrich jury could
have divided on which bribery he committed, with the result that there
was no unanimous verdict as to any act.  There was no such possibility
here.  People v. Perryman (1987) 188 Cal.App.3d 1546, 1550 ['where

15

1    the acts were substantially identical in nature, so that any juror believing

2    one act took place would inexorably believe all acts took place, the

3    instruction is not necessary to the jury's understanding of the case'] and

4    People v. Schultz (1987) 192 Cal.App.3d 535, 539 [It is well established

5    that a trial court is not obligated to give an instruction if the evidence

6    presented at trial is such as to preclude a reasonable jury from finding

7    the instruction applicable] are in accord.

8        Here, defendant fails to articulate how the evidence presented at

9    trial might lead some jurors to conclude that he was guilty of one act of

10   molestation but not another, while other jurors may have determined that

11   he was guilty of the second offense but not the first. The defense to all

12   the offenses was that he did not commit any of the charged acts, and that

13   Marian was falsely accusing him to excuse her poor performance in

14   school. Because there was no danger that defendant would be convicted

15   even though there was no single offense which all the jurors agreed he

16   committed, the unanimity instructed was not warranted.

17   (Answer Ex. B at B114-17 (citations omitted).)

18       **3.    Analysis.**

19   Even assuming Plaintiff's claim is cognizable on federal habeas review,

20   "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the

21   level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437, 124 S.

22   Ct. 1830, 1832, 158 L. Ed. 2d 701 (2004). In order to obtain federal habeas relief

23   based on a trial court's failure to give an instruction, a petitioner must show that

24   the failure to give the instruction was error, and that the error so infected the entire

25   trial that he was deprived of his constitutional right to a fair trial. Waddington v.

26   Sarausad, 129 S. Ct. 823, 832, 172 L. Ed. 2d 532 (2009) (citations omitted); see

27   also Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed. 2d 203

28

16

1   (1977); see also McGuire, 502 U.S. at 72 (quoting Cupp v. Naughten, 414 U.S.

2   141, 147, 94 S. Ct. 396, 400, 38 L. Ed. 2d 368 (1973)).  Because an omitted

3   instruction is less likely to be prejudicial than a misstatement of the law, a

4   petitioner seeking habeas relief based on a failure to give a particular instruction

5   bears an "especially heavy" burden.  Henderson, 431 U.S. at 155.

6       Moreover, the alleged error must be considered in the context of the

7   instructions as a whole and the entire trial record (including the arguments of

8   counsel).  McGuire, 502 U.S. at 72; United States v. Frady, 456 U.S. 152, 169, 102

9   S. Ct. 1584, 71 L. Ed. 2d 816 (1982); Cupp, 414 U.S. at 147.  Thus, even if the

10   court's failure to provide these instructions was error, Petitioner still would not be

11   entitled to habeas relief unless the error had a "substantial and injurious effect or

12   influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619,

13   637-38, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) (to obtain habeas relief, the

14   trial error must have had "substantial and injurious effect or influence in

15   determining the jury's verdict."); see also Bradley v. Duncan , 315 F.3d 1091,

16   1098-99 (9th Cir. 2002).

17       In this case the prosecution presented evidence of multiple incidents of rape

18   and molestation during the same consecutive nine-month period, from July 1994

19   through March 1995.  The victim testified that Petitioner had intercourse with her

20   on a weekly basis, and, when not engaging in intercourse, he either fondled or

21   sucked her breasts, placed his penis on her buttocks, or ejaculated onto her

22   clothing.  (Answer Ex. B at B110.)  Petitioner did not pursue a different defense as

23   to the purportedly different acts – he contended that he did not commit any of the

24   crimes and that the victim fabricated the story in order to excuse her poor grades

25   and behavior.  (RT at 7563, 7617); see Stankewitz, 51 Cal. 3d at 100.  Moreover,

26   the jury was instructed generally with CALJIC 17.02 that "[e]ach Count charge[s]

27   a distinct crime.  You must decide each Count separately" (CT at 365), and with

28   CALJIC 17.50, stating that all twelve jurors must agree in order to reach a verdict

on any given count (id. at 375).  The jury is presumed to have understood and followed the court's instructions unless there is admissible evidence to the contrary.  Weeks v. Angelone, 528 U.S. 225, 234, 120 S. Ct. 727, 145 L. Ed. 2d 727 (2000) (citing Richardson v. Marsh, 481 U.S. 200, 211, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987)).  Petitioner has failed to produce any evidence showing that the jury failed to follow the instructions it was given.

In short, the Court agrees with the court of appeal that the acts were substantially identical in nature, so that any juror believing one act took place would inexorably believe all acts took place, and the instruction was not necessary to the jury's understanding of the case.  Petitioner has not shown that in light of the entire record, the failure to give a unanimity instruction violated California law, much less so infected his trial with unfairness sufficient to violate due process.  McGuire, 502 U.S. at 72.

Based on the foregoing, the Court finds that the California court's rejection of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.  Thus, habeas relief is not warranted on this claim.

**B.** **Habeas Relief Is Not Warranted with Respect to Petitioner's Claim that There Was Insufficient Evidence to Support the Rape Allegations.**

**1.** **Background.**

Petitioner contends that there was insufficient evidence to establish the element of duress or force to sustain the rape allegations in counts two through ten. (Answer Ex. A1 at A67-69.)  Specifically, Petitioner points to evidence showing that the victim "knew when [Petitioner] wanted intercourse and did not resist in anyway." (Id. at A70.)  He also notes that the victim did not try to stop him when he pulled her undergarments aside in preparation for intercourse.  (Id.) He argues that his age, size advantage, and role as Marian's stepfather "did not per

18

se establish duress.  It only creates the potential for psychological coercion . . ."
(Id. at A72.)  He claims that there was no evidence that he directly threatened the
victim with physical harm, or that he "impliedly threatened Marian with harm
which caused her to submit to him on each and every occasion."  (Id. at A73.)  He
contends that his comments to the victim to not disclose the molestations, did not
establish duress because such comments merely showed threats made after the sex
acts were accomplished to prevent disclosure, not a threat to perform the acts
themselves.  (Id.)

### 2.    California Court Opinions.

In rejecting Petitioner's claim, the court of appeal stated as follows:

> 'Duress' has been defined as 'a direct or implied threat of force,
> violence, danger, hardship or retribution sufficient to coerce a
> reasonable person of ordinary susceptibilities to (1) perform an act
> which otherwise would not have been performed or, (2) acquiesce in an
> act to which one otherwise would not have submitted.' [Citation.]  As
> this court recognized in People v. Superior Court (Kneip) (1990) 219
> Cal.App.3d 235, duress involves psychological coercion. (Id. at p. 238.)
> Duress can arise from various circumstances, including the relationship
> between the defendant and the victim and their relative ages and sizes.
> [Citations.]  'Where the defendant is a family member and the victim is
> young, . . . the position of dominance and authority of the defendant and
> his continuous exploitation of the victim' is relevant to the existence of
> duress.

> Marian testified that although she never said "no" to defendant's
> advances, she was "too scared" to reject him, because her "family would
> be hurt."  She testified as follows:

> Prosecutor:  "Did [defendant] ever . . . during this period of

time . . . in Palmdale . . . ever make any . . . threats . . . if you were to tell anybody?

Marian: ". . . [He] would just hurt us.

Prosecutor: "Did you believe him?

Marian: "Yeah.

Prosecutor: "[E]ver see [defendant] be violent towards any . . . of your family?

Marian: "Mom. . . ."

Marian "never agreed to have sex."  Defendant told her not to tell anyone because it was a "secret."  She was 12 and 13 at the time and looked to defendant as a father figure.  She repeated that she never resisted "because I was too scared . . . that he would just hurt my family, my mom."

On cross-examination, Marian testified as follows:

Defense attorney: "Did he ever in any way threaten you?

Marian: "Yes. . . . I don't know if it was threatening me, he told me about my mom . . . and my brother . . . he would just hurt them.

Defense attorney: "You didn't take those as threats . . . ?

Marian: "I was scared of him."

Marian also testified that as long as she gave in to defendant's advances, she was "making sure my mom didn't get slapped. . . ."

In our view, the foregoing evidence establishes the element of duress.  The victim, 12 and 13 years old at the time of the molestation, was afraid of her stepfather, who took advantage of his psychological dominance as an adult authority figure.  Moreover, defendant specifically threatened to harm Marian's mother and brother if Marian

20

1    revealed their secret.  This qualifies as duress.

2    (Answer Ex. B at B117-19 (citations omitted).)

3       **3.    Legal Standard.**

4       The Fourteenth Amendment's Due Process Clause guarantees that a

5    criminal defendant may be convicted only "upon proof beyond a reasonable doubt

6    of every fact necessary to constitute the crime with which he is charged."  In re

7    Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).  The

8    Supreme Court announced the federal standard for determining the sufficiency of

9    the evidence to support a conviction in Jackson v. Virginia, 443 U.S. 307, 99 S.

10   Ct. 2781, 61 L. Ed. 2d 560 (1979).  Under Jackson, "[a] petitioner for a federal

11   writ of habeas corpus faces a heavy burden when challenging the sufficiency of

12   the evidence used to obtain a state conviction on federal due process grounds."

13   Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  The Supreme Court has

14   held that "the relevant question is whether, after viewing the evidence in the light

15   most favorable to the prosecution, *any* rational trier of fact could have found the

16   essential elements of the crime beyond a reasonable doubt."  Jackson, 443 U.S. at

17   319; see also Wright v. West, 505 U.S. 277, 284, 112 S. Ct. 2482, 120 L. Ed. 2d

18   225 (1992).  "Put another way, the dispositive question under Jackson is 'whether

19   the record evidence could reasonably support a finding of guilt beyond a

20   reasonable doubt.'"  Chein v. Shumsky, 373 F.3d 978, 982-83 (9th Cir. 2004) (en

21   banc) (quoting Jackson, 443 U.S. at 318).

22      When the factual record supports conflicting inferences, the federal court

23   must presume, even if it does not affirmatively appear on the record, that the trier

24   of fact resolved any such conflicts in favor of the prosecution, and the court must

25   defer to that resolution.  Jackson, 443 U.S. at 326.  "Jackson cautions reviewing

26   courts to consider the evidence 'in the light most favorable to the prosecution.'"

27   Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004) (quoting Jackson, 443 U.S. at

28

21

319). Additionally, "[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation omitted). The federal court must refer to the substantive elements of the criminal offense as defined by state law and look to state law to determine what evidence is necessary to convict on the crime charged. Jackson, 443 U.S. at 324 n.16; Juan H., 408 F.3d at 1275.

The Jackson standard applies to federal habeas claims attacking the sufficiency of the evidence to support a state conviction. Juan H., 408 F.3d at 1274; Chein, 373 F.3d at 983; see also Bruce, 376 F.3d at 957. The AEDPA, however, requires the federal court to "apply the standards of Jackson with an additional layer of deference." Juan H., 408 F.3d at 1274. The federal court must ask "whether the decision of the California Court of Appeal reflected an 'unreasonable application' of Jackson and Winship to the facts of this case." Id. at 1275 & n.13.

**4.    Analysis.**

As noted by the court of appeal, in California the element of duress is defined as: "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." (Answer Ex. B at B117-18.) California courts, including the court of appeal in this matter, rely on such relevant factors as the past relationships of the parties, age and size differential, positions of authority or dominance, and whether the exploitation was continuous, in order to prove duress. People v. Super. Ct. (Kneip), 219 Cal. App. 3d 235 (1995). Age discrepancy is important in evaluating duress, especially if a young child is involved, as in that case, not much evidence is required to show that the sex was accomplished by means of duress, menace, or force. People v.

1   Pitmon, 170 Cal. App. 3d 38, 50-51 (1985).

2       The jury was instructed with CALJIC 10.00 which reads in relevant part:

3           Every person who engages in an act of sexual intercourse with

4       another person who is not the spouse of the perpetrator accomplished

5       against that person's will by means of force, violence, duress, menace,

6       or fear of immediate and unlawful bodily injury to that person or to

7       another person, is guilty of the crime of rape in violation of Penal Code

8       section 261(a)(2).

9               . . . .

10          "Duress" means a direct or implied threat of force, violence,

11      danger, or retribution sufficient to coerce a reasonable person of

12      ordinary susceptibilities to perform an act which she . . . otherwise

13      would not have submitted. The total circumstances, including the age

14      of the alleged victim, and his or her relationship to the defendant, are

15      factors to consider in appraising the existence of duress.

16  (CT at 358-59.)

17      The evidence presented was more than sufficient to satisfy these elements

18  and convict Petitioner on the rape charges. The victim testified that she never

19  agreed to have sex with Petitioner and that he told her not to tell anyone because it

20  was a secret. (Answer Ex. B at B119.) She was only twelve when the abuse

21  began and Petitioner told her he would hurt her family if she failed to keep the

22  secret. (Id.; RT at 6320-21, 6323.) A rational jury could reasonably find that

23  Petitioner threatened to harm the victim's family if she did not submit to his

24  advances and that she took, and continued to take, this threat seriously. (Answer

25  Ex. B at B119; RT at 6320-21, 6323.) The Court agrees with the court of appeal's

26  assessment that the age differential, Petitioner's position of authority, and his

27  orders to keep his actions secret or else he would hurt the victim's family,

28  qualified as duress. Thus, under the deferential standard of Jackson, the evidence

1  of duress, force, and fear was sufficient to support the jury's finding on the rape

2  counts. Jackson, 443 U.S. at 319.

3       Based on the foregoing and after viewing the evidence presented in the light

4  most favorable to the prosecution, presuming that the jury resolved all conflicting

5  inferences from the evidence against Petitioner, the Court finds that a rational

6  juror "could reasonably have found beyond a reasonable doubt" that force or

7  duress was a proven element in the crimes alleged. Jackson, 443 U.S. at 325-26.

8  Mindful of the "sharply limited nature of constitutional sufficiency review" and

9  applying the "additional layer of deference" required by the AEDPA, this Court is

10 unable to conclude that the California court's rejection of this claim was

11 objectively unreasonable. Juan H., 408 F.3d at 1274-75 (quoting Wright, 505 U.S.

12 at 296-97); see also Jackson, 443 U.S. at 319, 326.  Thus, habeas relief is not

13 warranted on this claim.

14 **C.    Plaintiff's Third Ground for Relief Is Moot.**

15      Petitioner contends that the abstract of judgment should be amended to

16 conform to the judgment.  (Pet. at 6.)  The trial resulted in convictions for rape

17 under California Penal Code section 261(a)(2), whereas the original abstract of

18 judgment indicated that the convictions in counts six through ten were for forcible

19 lewd acts under Penal Code section 288(b)(1).  (Lodgment 3 at 25.)  The State

20 conceded this error, as noted by the California Court of Appeal, which ordered the

21 abstract amended.  (Answer Ex. B at B119.)

22      If, at the time of decision, the Court cannot redress the alleged wrong, the

23 issue is moot.  See North Carolina v. Rice, 404 U.S. 244, 246-48, 92 S. Ct. 402, 30

24 L. Ed. 2d 413 (1971); Aaron v. Pepperas, 790 F.2d 1360, 1362 (9th Cir. 1986).

25 Mootness is a constitutionally imposed limit on the jurisdiction of the federal

26 court.  U.S. Const. Art. III, § 2.  In order for a federal court to have jurisdiction

27 over a case, there must be an actual case or controversy at the time the case is

28

decided.  See Preiser v. Newkirk, 422 U.S. 395, 401, 95 S. Ct. 2330, 45 L. Ed. 2d 272 (1975) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.")  Thus, if there is no longer a possibility that a party seeking relief can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction.  See Ruvalcaba v. City of Los Angeles, 167 F.3d 514, 521 (9th Cir. 1999).

Respondent has attached the Amended Abstract of Judgment to the Answer. (Answer Ex. E.)  The changes ordered by the court of appeal have been made and counts six through ten accurately reflect Petitioner's convictions for rape.  (Id.) Thus, the Court finds that this claim is moot.

**D.    Habeas Relief Is Not Warranted on Petitioner's Claim That the Imposition of Consecutive Terms and the Upper Term Sentence Violated His Right to a Jury Trial Under Blakely and Cunningham.**

**1.    Background.**

Petitioner contends that the imposition of consecutive sentences and the upper term sentence violated his right to a jury as provided in Blakely and Cunningham.  (Pet. at 6.)

Petitioner was sentenced to a state prison term of seventy years.  As set forth by the court of appeal in its decision, the trial court gave the following explanation for its decision to impose the upper term of sixteen years on count one, continuous sexual abuse:

> [T]he court finds the following factors in aggravation.  Number 1, the nature of the crime where as a 288.5 can be committed by as little as three acts of substantial sexual conduct over three months these crimes that occurred between the months were numerous way beyond what would be required for a 288.5.  Further, the defendant took . . . advantage of a position of trust . . . in that he was the stepfather who was

25

trusted with the victim in this case.  Thirdly, the victim was particularly vulnerable in that he sought her out when there were no others around to come to her aid or to protect her from the defendant. Also, there are numerous crimes.  The way the prosecutor charged this case he could have charged literally hundreds of crimes in this case but yet chose to only allege 19, some of which are duplicative.  So that is a further aggravating factor.  The defendant could have been convicted of many more counts that were not even charged.

(Answer Ex. B at B121 (internal quotation marks omitted).)[7]  The trial court selected the mid-term of six years on all the other counts.  (Lodgment 3 at 16-22.) As to the use of consecutive terms, the court imposed eight consecutive terms for the eight rape convictions in counts two through nine.  (Id. at 16-19.)  The court noted that, because the rape counts were on nine separate occasions, consecutive sentences were mandated under California Penal Code section 667.6(d).  (Answer Ex. A2 at A293.)  The court stayed imposition of sentence on counts eleven through nineteen pursuant to California Penal Code section 654.  (Lodgment 3 at 19-22.)

## 2.  **California Court Opinions**.

The California Court of Appeal, finding Petitioner had waived the claims by failure to object, nevertheless rejected both the upper term and consecutive term claims on the merits:

_____

[7] Although Respondent refers to certain pages in the Reporter's Transcript as reflecting the sentencing hearing, and those same pages are reflected in Petitioner's Supplemental Appeal Brief to the California Court of Appeal, the Court has been unable to find the referenced transcript.  Because the court of appeal decision; the Clerk's Transcript, Lodgment 3; and Petitioner's Supplemental Opening Brief on appeal (Answer Ex. A2) all reflect what transpired at the hearing, the missing pages are not essential to the Court's decision.

1      Although the [trial court's] findings are not specifically reflected

2  in the jury's verdict, it is undisputed that appellant is Marian's stepfather

3  and thus held a position of trust, and that the offenses occurred when

4  Marian was 12 and 13 years old and was, as a child on the cusp of

5  adolescent, particularly vulnerable.  We thus see no possibility that

6  appellant would receive a more favorable sentence if this matter were

7  remanded for a new sentencing hearing.

8      We see no federal constitutional violation in the imposition of

9  consecutive sentences.  The trial court here ruled that consecutive

10  sentences were required by section 667.6, subdivision (d) on the grounds

11  that the offenses occurred on separate occasions.  The verdict on each

12  of counts 2 through 9 included the jury's finding, beyond a reasonable

13  doubt, that appellant committed the crime of rape on specific dates, that

14  is, separate occasions.  This fully complies with the Sixth Amendment

15  jury trial and Fourteenth Amendment due process clause rights.

16  Moreover, in this state, every person who commits multiple crimes

17  knows that he or she is risking consecutive sentencing.  While such a

18  person has the right to the exercise of the trial court's discretion, the

19  person does not have a legal right to concurrent sentencing, and as the

20  Supreme Court said in Blakely, "that makes all the difference insofar as

21  judicial impingement upon the traditional role of the jury is concerned."

22  (Answer Ex. B at B121-22 (citations omitted).)

23      **3.**    **Imposition of Consecutive Sentences**.

24      To the extent Petitioner contends that his Sixth Amendment rights were

25  violated by the imposition of consecutive sentences based on factual findings

26  made by the trial court at sentencing and not upon facts found by the jury as

27  required under Blakely and Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct.

28

1   2348, 147 L. Ed. 2d 435 (2000), this claim fails.  The United States Supreme

2   Court has answered in the negative the question of whether the Sixth Amendment,

3   as construed in Apprendi and Blakely, requires that facts necessary to impose

4   consecutive sentences be found by the jury or admitted by the defendant.  Oregon

5   v. Ice, --- U.S. ----, 129 S. Ct. 711, 719, 172 L. Ed. 2d 517 (2009) (upholding an

6   Oregon statute that assigned to judges, rather than juries, the findings of fact

7   necessary to impose consecutive, rather than concurrent, sentences for multiple

8   offenses).  Thus, habeas relief is not warranted on this claim.

9   **4.   Imposition of the Upper Term Sentence.**

10   The Supreme Court decided in Blakely that a defendant in a criminal case is

11   entitled to have a jury determine beyond a reasonable doubt any fact that increases

12   the maximum sentence, unless the fact was admitted by the defendant or was

13   based on facts reflected in the jury verdicts.  Blakely, 542 U.S. at 303-04.  The

14   defendant in Blakely had entered a guilty plea, after which he was given a

15   sentence in excess of the statutory maximum on the basis of the trial judge's

16   finding that he had acted with "deliberate cruelty."  Id. at 300.  The Supreme Court

17   determined that the sentence was improper because the "deliberate cruelty"

18   finding was supported by facts that "were neither admitted by petitioner nor found

19   by a jury."  Id. at 303.  As explained by the Blakely Court, "[w]hen a judge inflicts

20   punishment that the jury's verdict alone does not allow, the jury has not found all

21   the facts 'which the law makes essential to the punishment' . . . and the judge

22   exceeds his proper authority."  Id. at 304 (citation omitted).  In reaching this

23   determination, the Supreme Court applied the rule set forth earlier in Apprendi

24   that "[o]ther than the fact of a prior conviction, any fact that increases the penalty

25   for a crime beyond the prescribed statutory maximum must be submitted to a jury,

26   and proved beyond a reasonable doubt."  Id. at 301.  Following Blakely, the

27   United States Supreme Court held in United States v. Booker, 543 U.S. 220, 125

28   S. Ct. 738, 160 L. Ed. 2d 621 (2005), that the decision in Blakely applied to the

United States Sentencing Guidelines.  The Supreme Court explained that its precedents "make clear that the 'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose <u>solely on the basis of the facts reflected in the jury verdict or admitted by the defendant</u>."  <u>Booker</u>, 543 U.S. at 232 (internal quotation marks omitted).

Subsequently, the California Supreme Court held in <u>Black I</u> that "the judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence . . . under California law does not implicate a defendant's Sixth Amendment right to a jury trial."  <u>Black I</u>, 35 Cal. 4th at 1244.  The California Supreme Court reasoned that a "judge's discretion to identify aggravating factors in a case is guided by the requirement that they be 'reasonably related to the decision being made.'"  <u>Id.</u> at 1255 (citation omitted).  Thus, the California Supreme Court held, "[t]he imposition of an upper-term sentence under California's determinate sentencing law does not implicate the concerns" expressed by the majority opinion in <u>Booker</u>.  <u>Id.</u> at 1256.

The United States Supreme Court rejected this reasoning and held that "[i]n accord with <u>Blakely</u> . . . the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum."  <u>Cunningham</u>, 549 U.S. at 288.  Further, facts permitting the imposition of an upper term sentence must be found by the jury, not the judge.  <u>Id.</u> at 288-93.  In so finding, the United States Supreme Court expressly rejected the California Supreme Court's conclusions in <u>Black I</u> that the upper term, and not the middle term, qualifies as the relevant statutory maximum and that California's determinate sentencing law ("DSL") "does not implicate significantly the concerns underlying the Sixth Amendment's jury-trial guarantee."  <u>Id.</u> at 290-91.

Thereafter, the Supreme Court vacated <u>Black I</u> and remanded it to the California Supreme Court for further consideration in light of <u>Cunningham</u>.  <u>See</u> <u>Black v. California</u>, 549 U.S. 1190, 127 S. Ct. 1210, 167 L. Ed. 2d 36 (2007).  On

29

1  remand, the California Supreme Court noted that under the DSL (as in effect prior

2  to the amendments the California Legislature made subsequent to <u>Cunningham</u>),

3  "the existence of a single aggravating circumstance is legally sufficient to make

4  the defendant eligible for the upper term [sentence]."  <u>People v. Black</u>, 41 Cal. 4th

5  799, 813 (2007) ("<u>Black II</u>") (citing <u>People v. Osband</u>, 13 Cal. 4th 622, 728

6  (1996)).

7      Under California's DSL at the time, three terms of imprisonment were

8  specified by statute for most offenses, but the trial court's discretion in selecting

9  among the three options is limited by California Penal Code section 1170 and

10  California Rules of Court 4.420.  <u>See</u> <u>id.</u> at 808-09.  In <u>Black II</u>, the California

11  Supreme Court held that, in situations where "one aggravating circumstance has

12  been established in accordance with the constitutional requirements set forth in

13  <u>Blakely</u>," the "Constitution permits the trial court to rely upon any number of

14  aggravating circumstances in exercising its discretion to select the appropriate

15  term by balancing aggravating and mitigating circumstances."  <u>Id.</u> at 812-13.  The

16  California Supreme Court found Black's upper term sentence to be constitutional

17  because the trial judge had imposed an upper term based on several aggravating

18  circumstances including two – the defendant's use of force, which "was supported

19  by the jury's verdict," and the defendant's criminal history – which "independently

20  satisfy Sixth Amendment requirements."  <u>Id.</u> at 816-20.

21      Even if the imposition of the upper term based on the factors found by the

22  sentencing judge was contrary to, or an unreasonable interpretation of, <u>Apprendi</u>

23  and its progeny, the error would be subject to review for harmlessness pursuant to

24  <u>Brecht</u>.  <u>Washington v. Recuenco</u>, 548 U.S. 212, 221-22, 126 S. Ct. 2546, 165 L.

25  Ed. 2d 466 (2006) (holding that the harmless error analysis applies to a claim of

26  Sixth Amendment <u>Blakely</u> error derived from failure to submit a sentencing factor

27  to a jury).

28      Under <u>Brecht</u>, this Court must grant a petitioner habeas relief if there is

30

1   "'grave doubt' as to whether a jury would have found the relevant aggravating

2   factors beyond a reasonable doubt." <u>Butler v. Curry</u>, 528 F.3d 624, 648 (9th Cir.

3   2008). It is well established that "[g]rave doubt exists when, 'in the judge's mind,

4   the matter is so evenly balanced that he feels himself in virtual equipoise as to the

5   harmlessness of the error.'" <u>Id.</u> (quoting <u>O'Neal v. McAninch</u>, 513 U.S. 432, 435,

6   115 S. Ct. 992, 130 L. Ed. 2d 947 (1995)). Because under California law, "only

7   one aggravating factor is necessary to set the upper term as the maximum term[,] .

8   . . [a]ny <u>Apprendi</u> error . . . will be harmless if it is not prejudicial as to just one of

9   the aggravating factors at issue." <u>Id.</u>

10        In this case, even if the imposition of the upper term based on the factors

11  found by the sentencing judge was contrary to, or an unreasonable interpretation

12  of, <u>Apprendi</u> and its progeny, it is clear that the victim was particularly vulnerable

13  (she was twelve and thirteen years old at the time of the charged crimes), and that

14  Petitioner, as her stepfather, took advantage of a position of trust to commit the

15  offenses. Either of these factors would support imposition of the upper term

16  sentence under California Rules of Court 4.421(a)(3) and (a)(11). The Court is

17  confident that a jury would have found at least one of these aggravating factors in

18  a manner consistent with <u>Cunningham</u> and the Sixth Amendment. <u>Butler</u>, 528

19  F.3d at 648-49. Accordingly, the Court finds that any <u>Cunningham</u> error was

20  harmless.

21        Based on the foregoing, the Court finds that the California court's rejection

22  of Petitioner's claim was neither contrary to, nor involved an unreasonable

23  application of, clearly established federal law, as determined by the United States

24  Supreme Court. Thus, habeas relief is not warranted on this claim.

25  / / /

26  / / /

27  / / /

28

31

## VII.

## RECOMMENDATION

IT THEREFORE IS RECOMMENDED that the District Court issue an Order:  (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.


DATED:  October 26, 2010

HONORABLE OSWALD PARADA
United States Magistrate Judge

1
2
3
4
5
6
7

# PROPOSED

8       UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16

| | |
|---|---|
| GEORGE H. GAGE, ) | Case No. CV 05-5057-ODW (OP) |
| ) | |
| ) | ORDER ADOPTING FINDINGS, |
| Petitioner, ) | CONCLUSIONS, AND |
| ) | RECOMMENDATIONS OF |
| v. ) | UNITED STATES MAGISTRATE |
| ) | JUDGE |
| GEORGE J. GIURBINO, Warden, ) | |
| ) | |
| ) | |
| Respondent. ) | |

17          Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, all the records

18   and files herein, and the Report and Recommendation of the United States Magistrate

19   Judge, de novo.  The Court concurs with and adopts the findings, conclusions, and

20   recommendations of the Magistrate Judge,

21   / / /

22   / / /

23   / / /

24
25
26
27
28

IT IS ORDERED  that Judgment be entered:  (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.


DATED:  _____

_____
HONORABLE OTIS D. WRIGHT, II
United States District Judge



Prepared by:


_____
HONORABLE OSWALD PARADA
United States Magistrate Judge

# PROPOSED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GEORGE H. GAGE,                     )        Case No. CV 05-5057-ODW  (OP)
                                    )
                                    )        J U D G M E N T
              Petitioner,           )
                                    )
         v.                         )
                                    )
GEORGE J. GIURBINO, Warden,         )
                                    )
                                    )
              Respondent.           )
_____ )

        Pursuant to the Order Adopting Findings, Conclusions, and Recommendations of the United States Magistrate Judge,

        IT IS ADJUDGED that the Petition is denied and this action is dismissed with prejudice.


DATED: _____         _____
                                HONORABLE OTIS D. WRIGHT, II.
                                United States District Judge

Prepared by:



_____
HONORABLE OSWALD PARADA
United States Magistrate Judge